So we will hear argument next in number 232391 China Manufacturers Alliance against United States. So good morning. Good morning, Your Honors. I'm James Durling on behalf of the Appellant CMA. I'm sorry. I'm James Durling on behalf of Appellant CMA and Doublecoin. Before I get into the heart of my argument about substantial evidence, I just want to make clear the parameters of what I'm going to cover in my argument. First, in light of this court's decision in Pirelli and the discussion we just had, we are not pursuing the arguments that it was legal error to not consider the export considerations to only factor consider factor three. So the argument that that legal error has been, in our view, just positively resolved by Pirelli. But that leaves as a separate question. When you get to substantial evidence, it's substantial evidence for the record as a whole. And we will argue that those points are relevant in evaluating the record evidence as a whole. The other point I just want to make clear at the outset, just to kind of set the stage, especially in light of the argument we just heard, this is a review of the Fifth Administrative Review. This is a decision that Commerce made almost 10 years ago. It was May of 2015, literally almost 10 years ago. And the state of Commerce's law and practice on separate rates was very different at that time. So the core issue before the court here, and that's what I now turn to, is the decision 10 years ago, as written, does it pass the substantial evidence test? And I submit that it does not. And there are two main reasons, and I'll address each in as much detail as you'll allow me. The first is the decision as written was logically inconsistent. Internally inconsistent decisions cannot pass substantial evidence. Second, the decision as written largely ignored the key pieces of evidence that should have been addressed. So putting aside the issue of whether it was legal error the way they wrote the decision, we think it does not pass substantial evidence. Now let me address each of those two categories of objections. First, logical inconsistencies. Two points. First, Commerce in its written decision stresses that the legal environment in China is permissive of independent actions. That's the whole reason why it still draws this distinction between de jure, de facto determinations. And in particular, the decision as written stresses permissive of independent actions about export activities. So that was the relevant legal framework that the decision itself articulated at the time. The second key logical premise that Commerce used was it said, we're still applying our four-factor test. So the decision as written- The four-factor test is not a balancing test, right? No, Your Honor. If you fail one, you fail the test. Not necessarily, Your Honor, because we- Cite me any case of ours or the CIT that, or frankly, ours that says that. Because my understanding is Commerce's practice has always been consistent that you have to meet all four factors. And it's not a balancing test. With all due respect, Your Honor, Commerce's test 10 years ago was basically, we collect information on all of the factors and we make a decision holistically based on the record as a whole. It may be true that in the past 10 years, Commerce has shifted its policy and has become more and more narrow in saying what it will and won't address. But we're talking about- Can you cite me one instance where Commerce has found that somebody failed one of the but nonetheless satisfied the test? Well, in the ATM litigation, Your Honor, the record had information on all four of the factors, but Commerce ended up reversing itself based on consideration of just two of the factors. But the key point is they gathered information on everything. Is that answering my question that they found that you failed a factor on one of those things, but nonetheless they upheld it? Or just they found it sufficient on the two factors they considered to show lack of control? Your Honor, I haven't systematically reviewed all of the cases where Commerce has granted- Okay. I don't want to spend a lot of time on this. Just assume, I think the law is that if you fail one, you fail the test. It's not a balancing test. If that's the case, then who cares if they consider evidence on all four of the factors if you fail one? Because the court still has to decide, was the decision that you failed one supported by substantial evidence? So let's look at that one. Because what you failed here is the majority control. Because this is not like the cases we were just discussing where the government entity was a minority shareholder. The government entity is a majority shareholder here, right? That's correct, Your Honor. Right. And so that's Commerce's rule and has been Commerce's rule that if you're the majority shareholder, you don't show independence from the government wide entity. But Your Honor, with all due respect, that's not true. In fact, for this particular company, for CMA, it was found to satisfy the separate rate requirement in the original investigation, even though even at that time, there was majority ownership. The majority ownership as a per se rule is a recent evolution in Commerce practice. Commerce gets to change its mind if it has a good reason. And clearly, the fact that a government entity has a majority control, selects the shareholders who are the shareholders, who select the board of directors, who select the management, is sufficient for government control. I don't understand why we're talking about the fact that they're changing their mind. We're looking at what their analysis is in this case. My point wasn't that they changed their mind, Your Honor. My point was simply that it is not true that at the time of the Fifth Review, Commerce had a per se rule about majority ownership. Majority ownership was one of many facts that Commerce would consider. But here, it's the fact they consider dispositive. Yes. And in making that decision, Your Honor, they ignored the other evidence. No, no, no, no, no, no. Stop. I want... You agree they relied on the fact that there's majority control here to be dispositive. Is that legally incorrect? Under Pirelli, it is not legally incorrect. Okay. So now we're faced with a situation where they have relied on a legally sufficient reason. You have to show there's a lack of substantial evidence for their factual conclusion that there's majority control here. Can you do that? Yes. You absolutely think there's a lack of substantial evidence that the government-owned entity has a majority share? It's undisputed. No. Your Honor, here's the distinction. What I am attacking is the Commerce decision as written. And our... I'm not asking you that question. I'm asking you the legal... You agree that majority control is a legal sufficient reason to find you failed Factor 3. If that factual determination about Factor 3 is correct, which is basically... Right. That's what I'm trying to ask. What in the record shows that's not factually correct? Because the distinction we draw, Your Honor, is Commerce now seems to apply a theory that majority ownership means the company's... No, no, no. I don't want to go into all of this. I want to answer the first question. Commerce found that the government entity here is a majority shareholder. Yes, Your Honor. Is that correct? Yes. Are they or are they not a majority shareholder? They are a majority shareholder of the parent company of the U.S. entity. One of the factual distinctions here, Your Honor, is that we have a U.S. company operating... And you agreed that if they were the majority shareholder, that that was a legally sufficient reason to show control. More precisely, Your Honor, I accept that Pirelli establishes that it is not legal error for Commerce to rely on that factor alone. Can I just stop you at one point? I don't understand the premise of your argument, which seems to be that we're going to measure this particular decision by Commerce based on the law as it existed 10 years ago. That seems to be the premise of your argument. Yet at the front end, you admit that Pirelli governs a key issue here. And Pirelli as well after 10 years ago. So I don't understand... And your argument that you're framing seems to be a little different from what you said in your brief. I didn't understand your brief to be making this argument that the test of whether this was correct is measured by the law as of 10 years ago. Okay. I guess there are three different things we should distinguish, Your Honor. One is... What's your answer to my question? Once you give up Pirelli, then you give up potential control as well as individual actual control? The fundamental distinction we make with respect to Pirelli, the reason why we think Pirelli is not controlling on this issue is that Pirelli left open the question, is there in fact substantial evidence supporting Commerce's conclusion under Factor 3, which is more than just the mere existence of majority ownership, right? The logic of the Fifth Review decision was... When the standard says if you flunk one of the four tests, you're finished even though you won on the other three. But your argument is you've won on two, and that should affect the argument on three. No, our argument, Your Honor, our argument is that the Commerce finding about Factor 3, we submit that Factor 3 is more than just literally looking at the majority ownership. In other words, we just look at is the majority ownership. Pencils down, we don't consider anything else. At the time... I understand what you're saying. To... If Commerce makes a factual finding that there is majority ownership... Are you saying the law changed? I'm sorry. Are you saying the law changed between 5 and... Commerce... I'm sorry, I don't want to get into the numbers because that's the last case. But between what the law was on Factor 3 and what the law is now on Factor 3? No, Commerce's practice changed. And so our point, Your Honor... What was Commerce's practice with regard to your review? Commerce's practice in our review was that they would look at all of the factors... No, I don't want to talk about all the factors. What was their practice on Factor 3 at your review? They basically were still looking, Your Honor, at the question managerial control, but managerial control over what? And at its crux, our argument about substantial evidence is that even though there was record evidence of independence, day-to-day independence about things like setting the U.S. prices, which is, by Commerce's own terms, what they cared about, Commerce says, what we care about is the independence with respect to export activities. Even though there was evidence of that independence, instead of considering that evidence, Commerce simply said, majority owned, we're going to stop the analysis. And at the time... That sounds like Commerce's practice at the time then was actually different than what you were saying because that's what they said, that majority ownership was enough under Factor 3 in this case. How can you say Commerce's practice was different than what you just described their conclusion in this case was? Because 10 years ago, Your Honor, that was in fact Commerce's practice. Commerce... Not in this case, apparently. Well, but that's, we submit that is a failure to comply with substantial evidence because Commerce... How is that a substantial evidence question? That's a legal question. So either its practice was correct as a matter of law, which we now know it was because we've said so in Pirelli, or it wasn't. What Pirelli has said... It's not an evidence question, it's, is the practice this or that, and is that legally correct? Then we look at the evidence. If you start with the first question, is majority control enough to show de facto control, and that's legally contract, then it's undisputed that you have majority control. It answers all the questions. Either you have to convince us that majority control, standing alone, is not enough to have you fail Factor 3. I mean, that's what you have to convince us, but we're bound. No, I guess... I don't know why you're trying to... I know why you're trying to change this into a substantial evidence question because you want to get around Pirelli, but what you're describing is not a substantial evidence question. It is, what was Congress's policy in this case, and its policy in this case was, majority control is sufficient to show de facto control under 3. That's what they said in their decision in this case. That was what was on appeal the first time, and that's what their policy is now. That's not an evidence question, that's a legal question. With all due respect, Your Honor, I think it is an evidence question because implicit in your question is, you seem to be saying that majority control means control of absolutely everything, and our point is that under the standard that Congress was applying at the time, it had to be majority control and influencing the export decisions. Is that what it said here in this case? It's not. No, Your Honor, it is what it said in this case because joint appendix at 0425 to 0426, that's the commerce final determination where it basically specifically endorses the traditional view that the legal environment in China is permissive of independent actions about export activities. So they were still focusing on the export activities, and our point is, there was substantial evidence on the record about the independence, even given the majority ownership. Even given majority ownership, there was independence with respect to export activities. That evidence was never considered. In fact, none of the evidence that we submitted about why CMA was independent was not beholden to the government with respect to what Commerce said was the legally relevant factors. There were minority-controlled cases back then as well, right? Yes, and they each... And so that's the permissive environment. But that wasn't the distinction that we were drawing, Your Honor, because remember, in the original investigation, even for us, with the majority ownership, they said that, okay, we find that the facts here were sufficient to establish the independence, right? And our basic point is that, fundamentally, we have submitted a lot of evidence about the actual operational independence. Commerce refused to consider it, and we believe that even under Pirelli, Commerce had an obligation to consider the actual evidence we had submitted. It was not, at the time of the Fifth Review, a per se rule. We just looked at majority ownership and we stopped. Actual evidence and actual lack of control, as opposed to... At a bare minimum... What about potential control? I'm sorry? Potential control. Factual information that would have addressed either actual or potential control would have been fair game. Our point is that the determination as written didn't address any of that. So if there's potential control, why does Commerce have to look at actual control over certain other factors? Because there was substantial evidence on the record that there was, in fact, practically speaking, independence. So theoretical control... But if the decision can be made on three alone, and your actual control evidence that you want measured is on other factors, why does Commerce have to consider that? Because the core question was that evidence on the record, did it establish independence, even in the face of the majority ownership? And that's why it's also related to Factor 3. Because Factor 3 doesn't establish a per se rule. Majority ownership, it's over. At least in the time of the Fifth Review, that was not the standard. I see that my time has run over, so unless there are any other media... Restore your rebuttal time. Thank you. May it please the Court. The 65% ownership by a state-owned enterprise, that was enough, but there was substantial evidence on the record also further supporting Commerce's determination. If you look at... Can you just clarify for me or remind me or something? Did Commerce, at the time of this decision, say that majority ownership compelled a finding of non-independence? I don't believe that Commerce did that. What Commerce did was look at the other... Has it said that since then? I believe that now it has reached that conclusion, but as a practical matter, it still looks at other evidence if somebody proffers it as an explanation for why they're... So in 2015, you said it did not say that, so it said here that the majority ownership was in this case sufficient to draw the conclusion of independence. I believe it did, but then it also went further than that because it looked at specific evidence on the record. If you look at pages 3014 to 3018 of the administrative record, it talked about exactly the kind of evidence that... Is that a JA number or... Yes, JA. Sorry. So it talked about, first of all, the ownership structure, and it talked about how the majority owner was able to direct the composition of the Board of Directors, which in turn hired the general manager who maintains operational control over the company. So the Board of Directors would maintain operational control over the company. Then it looked at the minority shareholder protections that CMA contended were relevant and, in fact, verified the company that none of those protections were ever used during the relevant period. Ten years ago, what Commerce was doing? Yes, and then it went... You're saying they didn't have a flat rule that said if you have a majority, it's control, it's over? I don't believe they did because they went much farther down into the record, and the final thing they looked at, at page 3017 of the appendix... So what's your adversary complaining about? I think they're complaining that they did not get a separate rate. No, no, no, the way they're complaining, they have a process complaint here, right? Yes, they have a process complaint. He's framing it. I didn't see it in his brief, but in the way he's framing it now. That's correct. Ten years ago, he's, in essence, trying to say, I think, that they had a flat rule of some sort. Well, even if they did, it doesn't... Did they or didn't they? Yes or no? You know better than I do. I don't know right now, standing here. I don't believe they did because... Because you don't actually know. The answer you gave earlier, you don't know whether that's true or not. The answer I gave earlier was I don't... The answer I gave earlier was... You told the presiding judge that there was no flat rule. And that's what I believe from the record here, because Commerce dove much more deeply into the record than just saying 65%, therefore, the company is state-controlled. What Commerce did was looked at the other pieces of evidence. For example, the intertwined nature of the state-owned enterprise and DoubleCoin's management board. Didn't they actually find that CMA was free of government control on some of the factors? The Commerce focused on the management factor, which was the third factor of the four. Even 10 years ago? Yes. They only looked at the third factor? Yes, they looked at the third factor and gave it controlling weight. And in connection with the third factor, did they look at the other evidence that your advisor is saying they overlooked? I believe they looked at all of the evidence that was presented. Do you believe or mean... How carefully have you read the 10-year-ago report so you can... I have read it all very carefully. And I've read it all very carefully also in light of Pirelli and in light of the trial court's final decision, which was the one decision that was relevant to this case. It seems to me that their argument, at least in their briefs, was on factor three, it's not enough to just show government control in selecting the board of directors and the management, but that you actually, the Commerce have to come forth and show that that control leads to control of export prices. Right. And that's what we rejected in Pirelli.  And that was their primary argument in... In their brief. In their brief, in this case, yes. And for that reason, the facts in this case, with the exception of majority ownership, are on all fours with Pirelli. I mean, I'd note that at the appendix pages that I cited, it talked about how the state-owned enterprises was able to appoint the board of directors and how the board of directors was able to appoint management and to maintain operational control over the company and also the intertwined nature between the state-owned enterprise and the board of directors and management of DoublePoint. Are you aware of any cases where Commerce has ever found that factor three control wasn't shown or was shown, but nonetheless, you gave them an independent rate? I'm not aware of any cases. Are you forfeiting your lead argument? Your brief, your brief started with a different point, didn't it? About the mandate rule? Oh, no, we're not forfeiting it. The first sentence of this court's opinion... Well, it was like a dispositive argument. It is dispositive. And the first sentence of this court's... And just to be clear, so is the other argument. Yes, so is the other argument. But I turn straight to the merits. I believe the brief speaks for itself. But I'll just note that the very first sentence of this court's opinion in the first CMA said, it is undisputed that DoubleCoin failed to demonstrate independence from the Chinese government. We don't have to reach that argument, though. It's not jurisdictional, right? So if we agree on the merits, we can just ignore your first argument? That's correct. But if the court has a question on the merits, then it does need to reach our first argument. For these reasons, we respectfully request the court affirm. Thank you. I just have three points I would like to make in rebuttal. First, on the last issue about their opening argument, with all due respect, as we set forth in our brief, and as Judge Stansu found, the issue of substantial evidence had not previously been litigated, that the court's prior decision did not address the substantial evidence. And so the issue that we brought before the court of substantial evidence is still very much alive. Second point I would like to make is that boards don't set prices. Boards control management, but boards do not set prices. And that is precisely why, historically, and at the time of the Fifth Review, commerce put so much emphasis on what is the evidence we have about what is determining the prices. My third point is that I respectfully disagree with my colleague's characterization that commerce dug deeply into the record here. They did not. And the essence of our argument of why they did not dig deeply into the record is found at pages 60 to 62 of our brief. Can I take one more chance to see if I can understand what you're saying? Because frankly, I don't. Is your argument that at the time to show government control under Factor 3, they had to show specific control of export prices? And even though that is now overtaken by Pirelli, at the time, that was either their policy or the law. And that record doesn't show that. Is that what your argument is? More precisely, Your Honor, our argument is that even under Pirelli, there is a question, is there substantial evidence under Factor 3? OK, you've lost me again. I was giving you the best shot. Your substantial evidence argument makes no sense to me. This is a legal policy question, not a substantial evidence question. It is either the Commerce Department has to look at actual control over export prices for Factor 3 or it does not. Once you make that determination, then you look at what the evidence is. But what Pirelli decided, Your Honor, was, is Factor 3 by itself sufficient as a legal matter? Because that was the argument being presented. And what the court decided was it wasn't. Just to be clear, what Pirelli said was that commerce may choose to treat it as sufficient. And I guess I thought I was hearing you before making a kind of argument that said it had not so chosen in 2015. So the fact that, and it's not compelled to by the statute, we're now dealing with a policy choice by commerce. And that has to be, there has to be more consistency than there was at the time, even though it could have chosen something different. Maybe I misunderstood. No, no, I think your understanding is correct, Your Honor, because it fundamentally comes down to the question, control of what, right? And in our view, it is not sufficient to say just control in a general, unspecified, amorphous way, particularly not in a case like this, where there was specific evidence that commerce did not address. And in particular, if I were to, we summarized all the evidence at pages 60 to 60 to our opening brief. But if I were to point the court to the single fact that we think is most compelling for us, it is the fact that in this case, in this specific case, there was an agreement between CMA and its immediate parent, Doublecoin, guaranteeing CMA operational independence for setting prices. And yes, majority ownership at a higher level within the organization may be relevant. Our point is simply that commerce can't simply choose not to address at all any of that specific evidence in favor of this overarching majority control was enough. Thank you, Your Honor. Thanks to both counsel and the cases submitted. In fact, it's our business for today.